GENERAL AIR CONDITIONING COMPANY, INC., v. CHARLES B. DOUGLASS AND WIFE OLIVE J. DOUGLASS; DOUGLAS A. JOHNSON AND WIFE, LOTTIE M. JOHNSON; DURHAM BANK & TRUST COMPANY, TRUSTEE, AND HOME SECURITY LIFE INSURANCE COMPANY.

(Filed 24 November, 1954.)

**1. Husband and Wife § 13a (3)—**

No presumption arises from the mere fact of the marital relationship that the husband is acting as agent for the wife; there must be proof of the agency.

**2. Same—**

The fact that a contractor, with knowledge that the several tracts of land are held by the entireties, contracts and deals over a period of years solely with the husband in installing heating equipment in houses erected on the several lots, fails to show actual or implied authority in the husband to act in the premises as agent for the wife.

**3. Pleadings § 24—**

Allegation and proof must concur to establish a cause of action.

**4. Principal and Agent § 7d—**

Ratification confirms conduct, and the alleged principal cannot ratify the acts of a person in executing an unauthorized contract unless such person professes, represents, reports, assumes or undertakes to be acting as agent for the alleged principal.

**5. Estoppel § 5—**

An estoppel exists where a person is induced by words, conduct, or representation to act to his prejudice.

**6. Husband and Wife § 13a (3): Principal and Agent § 7d—**

Where a contractor, with knowledge that the several tracts of land are held by the entireties, contracts and deals over a period of years solely with the husband in installing heating equipment in houses erected on the several lots, and the husband does not act or profess to act as agent for the wife, and the wife does not by words or conduct represent or permit it to be represented that the husband is acting as her agent, the contractor may not hold the wife liable on the contract by ratification or estoppel.

**7. Husband and Wife § 16—**

An estate by entireties cannot be aliened, encumbered, nor a lien acquired upon it without the assent of both husband and wife; nor would a judgment against either be a lien upon the property.

**8. Laborers' and Materialmen's Liens § 1—**

A lien for labor and material arises out of the relationship of debtor and creditor created by contract, and it is for the debt that the lien is created by statute.

**9. Same—**

Mere knowledge by the owner that work is being done or material furnished does not enable the person furnishing the labor or material to obtain a lien.

**10. Same—**

Where a contractor contracts solely with the husband for material furnished in the erection of a house held by the husband and wife by entireties, the contractor may not enforce a lien upon the realty unless the wife is bound by the contract through agency, ratification or estoppel.

APPEAL by plaintiff from *Fountain, Special Judge,* March Civil Term 1954 of WAKE.

Action to recover contract price for the installation of a warm air-type heating system complete in a house on the property described in the Complaint, and to enforce thereon a laborers' and materialmen's lien.

The defendants Charles B. Douglass and Olive J. Douglass, his wife, owned this property by the entireties. Charles B. Douglass was engaged in the business of building and selling houses. About 11 March 1952 plaintiff entered into a written contract with Charles B. Douglass to install a warm air-type heating system complete in a house on the property described in the Complaint for an agreed price of $917.00. Plaintiff began this work on 17 April 1952, and completed it on 11 July 1952. When the work was completed, Charles B. Douglass inspected it, and said that it was satisfactory. Plaintiff has made demands for payment of said work upon Charles B. Douglass, but he has paid nothing.

Benjamin F. Carter testified on direct examination he was manager of plaintiff, and it installed 27 furnaces for Charles B. Douglass from 19 July 1951 to 12 March 1952, and that all the negotiations were with Charles B. Douglass alone. Carter further said: "I did not have any negotiations on these contracts and furnace jobs with Mrs. Douglass: in fact I have never met Mrs. Douglass." On cross-examination of Carter he testified: "We dealt with Charles B. Douglass, contractor, and all the checks we received for the jobs were from Mr. Charles B. Douglass. I knew that the property was held by the entireties, . . . In all our dealings with Mr. Douglass, contractor, we never have entered into any agreement with Mrs. Douglass whatsoever, and did not know Mrs. Douglass."

On 30 April 1952 plaintiff sent a bill to Charles B. Douglass for labor and material furnished prior to that date; and on 10 June 1952 billed Charles B. Douglass for a completed job though it was only substantially completed then, because he was getting ready to sell the house.

The only other witness for plaintiff was J. W. Bunn, Jr., who testified plaintiff made a written contract with Charles B. Douglass for the work in the instant case, and the contract was signed by plaintiff and Charles B. Douglass.

From 4 February 1951 to 4 March 1952 thirty-five conveyances of real estate were made to Charles B. Douglass and wife, and no conveyances to either individually. From 8 March 1951 to 18 June 1952 Charles B. Douglass and wife executed 72 conveyances.

On 18 June 1952 Charles B. Douglass and wife conveyed by deed the house and lot described in the complaint to Douglas A. Johnson and wife, Lottie M. Johnson. On 16 July 1952 Douglas A. Johnson and wife obtained a loan on said property from the Home Security Life Insurance Company, and gave a note secured by a deed of trust therefor to Durham Bank & Trust Company as trustee.

On 6 December 1952 plaintiff filed a notice of a claim of laborers' and materialmen's lien on the said house and lot in the Office of the Clerk of the Superior Court of Wake County. This action was instituted 11 February 1953.

At the close of plaintiff's evidence motions for judgment of nonsuit by the defendants Olive J. Douglass, Douglas A. Johnson and wife, Lottie M. Johnson, Durham Bank & Trust Company, Trustee, and Home Security Life Insurance Company were sustained. A similar motion was made by Charles B. Douglass, and was overruled.

The jury found that Charles B. Douglass was indebted to the plaintiff in the sum of $917.00. Judgment was entered that plaintiff have and recover of Charles B. Douglass $917.00 with interest; that Charles B. Douglass be taxed with the costs; that plaintiff recover nothing of the other defendants; and that the property described in the Complaint is not subject to notice of lien filed in the Office of the Clerk of the Superior Court of Wake County.

Plaintiff excepted and appealed as to the allowance of the motions for judgments of nonsuit, and as to the judgment signed by the court.

*Bunn & Bunn for Plaintiff, Appellant.*

*Howard E. Manning and Charles L. Fulton for Defendant Olive J. Douglass, Appellee.*

*Poyner, Geraghty & Hartsfield and James R. Trotter for Defendants Douglas A. Johnson, Lottie M. Johnson, Durham Bank & Trust Company, Trustee, and Home Security Life Insurance Company, Appellees.*

PARKER, J. Plaintiff alleged in its Complaint that "Charles B. Douglass acting for himself and as agent for his wife, Olive J. Douglass, entered into an entire and indivisible contract with plaintiff" to install a warm air-type heating system complete in a house on the lot described in the Complaint. The plaintiff contends such an agency can be implied from the facts in evidence.

All the defendants in their answers denied that Charles B. Douglass acted as agent for his wife. His wife in her answer alleged as a defense that she did not know plaintiff, had no dealings with it, had no knowledge that it placed any materials, or did any work on the property described in the Complaint.

"A husband is not *jure mariti* the agent of his wife, and if such agency is relied upon it must be proven." *Pitt v. Speight,* 222 N.C. 585, 24 S.E. 2d 350, and cases cited. No presumption arises from the mere fact of the marital relationship that the husband is acting as agent for the wife. There must be proof of the agency. *Pitt v. Speight, supra;* 26 Am. Jur., Husband and Wife, Sec. 228; 41 C. J. S., Husband and Wife, Sec. 70.

Plaintiff offered the testimony of two witnesses: the defendant Charles B. Douglass offered no evidence. The evidence tended to show these facts: Charles B. Douglass alone signed the contract sued upon. Plaintiff rendered the bills to him only for the work done under this contract. The manager of plaintiff testified all the negotiations were with Charles B. Douglass, that he had never met Mrs. Douglass. On cross-examination he said we dealt with Charles B. Douglass; all the checks we received for the jobs were from him; in all our dealings with him we never have entered into any agreement with Mrs. Douglass, and did not know Mrs. Douglass. The plaintiff has allegation that Charles B. Douglass was acting as agent for his wife, but there is a total failure of proof of such agency, or of facts from which it can be implied. Allegation without proof is insufficient. *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14. Both must concur to establish a cause of action. *Billings v. Renegar, ante,* 17, 84 S.E. 2d 268; *Aiken v. Sanderford,* 236 N.C. 760, 73 S.E. 2d 911.

The plaintiff further contends that Olive J. Douglass ratified the contract made by her husband and plaintiff in the present case; and if she did not ratify it, that she is estopped by her conduct and acts to deny that her husband had implied authority to act as her agent.

The substance of ratification as distinguished from estoppel is that ratification confirms conduct, and estoppel exists where one is induced to act to his prejudice. 2 C. J. S., Agency, Sec. 34(b).

"The doctrine is well settled that in order that an act or contract may be the subject of ratification by one other than the one who performed the act or entered into the contract, the latter must have, at the time of

performing the act or of entering into the contract, professed, represented, purported, assumed, or undertaken to be acting as agent for, or on behalf of, the one alleged to have subsequently ratified the act or contract." Anno. 124 A. L. R. 893 *et seq.*, where the cases are assembled.

In *Flowe v. Hartwick,* 167 N.C. 448 at p. 453, 83 S.E. 841, it is said: "It is well understood that in order to a valid ratification, when an unauthorized contract has been made for alleged principal, the agent must have contracted or professed to contract for a principal and the latter must signify his assent or his intent to ratify, either by words or by conduct." See also *Rawlings v. Neal,* 126 N.C. 271, 35 S.E. 597; *Jones v. Bank,* 214 N.C. 794, 1 S.E. 2d 135; 2 Am. Jur., Agency, Sec. 222.

All the evidence shows that not only in the instant case, but that in all the transactions of plaintiff with Charles B. Douglass, that plaintiff dealt with Charles B. Douglass alone. Charles B. Douglass in all these transactions, including the present one, did not act or profess to act for his wife. There is no evidence of ratification.

This Court said in *Barrow v. Barrow,* 220 N.C. 70, 16 S.E. 2d 460: "Where a person, by words or conduct, represents or permits it to be represented that another is his agent, he will be estopped to deny the agency as against third persons, who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency exists in fact." In the present case there is a total failure of evidence to bring the action within the principle of estoppel.

An estate by entireties cannot be aliened, encumbered, nor a lien acquired upon it without the assent of both husband and wife; nor would a judgment against either be a lien upon the property. *Winchester-Simmons Co. v. Cutler,* 199 N.C. 709, 155 S.E. 611; *Davis v. Bass,* 188 N.C. 200, 124 S.E. 566; *Finch v. Cecil,* 170 N.C. 72, 86 S.E. 992; *Hood v. Mercer,* 150 N.C. 699, 64 S.E. 897; *West v. R. R.,* 140 N.C. 620, 53 S.E. 477; *Bruce v. Nicholson,* 109 N.C. 202, 13 S.E. 790; *Healey Ice Mach. Co. v. Green,* 181 F. 890 (opinion by *Connor, J.,* formerly a member of this Court), affirmed 191 F. 1004, 4th C. C. A.

A laborers' and materialmen's lien arises out of the relationship of debtor and creditor, and it is for the debt that the lien is created by statute. Without a contract the lien does not exist. . *Brown v. Ward,* 221 N.C. 344, 20 S.E. 2d 324. In that case it is said: "Mere knowledge that work is being done or material furnished does not enable the person furnishing the labor or material to obtain a lien."

The debt to plaintiff was the debt of Charles B. Douglass alone. The plaintiff with knowledge that the property in this case was owned by Charles B. Douglass and wife, Olive J. Douglass, by the entireties contracted with Charles B. Douglass alone. It must abide by the written contract it made.

The judgment below is
Affirmed.